531 P.2d 161

**STATE BOARD OF DENTAL EXAMIN-
ERS, formerly the State Dental
Board,[1] Appellant,**

v.

**Dr. Bert E. HOFFMAN, Appellee.**

**No. I CA–CIV 2749.**

Court of Appeals of Arizona,
Division 1,
Department A.

Jan. 30, 1975.

Rehearing Denied March 6, 1975.

Review Denied April 22, 1975.

1. The official name was changed by a 1974 amendment found in A.R.S. § 32–1201(2).

Bruce E. Babbitt, Atty. Gen., by James Michael Low, Asst. Atty. Gen., and Jennings, Strouss & Salmon, Phoenix by John L. Kyl, Sp. Asst. Attys. Gen., for appellant.

Lewis & Roca, by John P. Frank, Walter Cheifetz, Sally S. Neely, and Sternberg, Sternberg & Rubin, Ltd., by Melvin Sternberg, Phoenix, for appellee.

## OPINION

STEVENS, Judge.

Bert E. Hoffman, D.D.S., the plaintiff, was successful in the trial court in securing a judgment directing that the State Dental Board issue him a license for the practice of dentistry. This appeal followed.

The basic issues are:

1. May the State Dental Board adopt a valid rule requiring a 75% grade on the Arizona Clinical Examination when the applicant is permitted to use the results of the National Board Examination on the theory of dentistry in lieu of the Arizona theory examination? and,

2. Must the unsuccessful applicant for a dental license exhaust his administrative remedies before seeking relief in the courts?

We answer both questions in the affirmative.

## STATUTORY BACKGROUND

In 1935 the Arizona Legislature adopted "The Dental Act of 1935" which is found in Chapter 24 of the Session Laws of that year.[2] Therein the "Arizona State Dental Board" was created, and in the act it was designated as "The Board." This designation will be carried forward in this opinion. The Board was authorized to license dentists and to revoke the licenses of dental practitioners. Licenses could be granted based upon licenses issued by a national board of dental examiners [§ 14] and the Board was also authorized to license dental practitioners based upon examinations given by the Board. [§§ 18 and 19]. Section 19 required both a theoretical and a practical examination. The act was silent as to the right of the applicant to seek a judicial review of the denial of an application for a license. Under § 21, should the Board revoke a license, the dentist was granted 30 days within which to proceed in the Superior Court by way of a writ of certiorari.

At that time there were no general laws permitting judicial review of the decisions of administrative boards and agencies and the right to a judicial review was found only in the express provisions of the legislation which created that specific board or agency.

An early step in the general law relating to the procedural aspects of administrative boards and agencies is found in Chapter 97, Session Laws of 1952. In general, this act provided that those boards and agencies to which the Legislature had granted the rule-making power must file their rules with the Secretary of State.

Recognizing that there was a need for a general law to supplement specific statutes and to authorize judicial review where the specific act was silent on that subject, the Legislature by Chapter 101, Session Laws of 1954, enacted the "Administrative Review Act" which is now found in the Arizona Revised Statutes in Article 6, Title

2. See generally A.R.S. §§ 32–1201 to 32–1290.

12, entitled "Judicial Review of Administrative Decisions." See A.R.S. §§ 12–901 to 12–914.

Later it was recognized by the Legislature that additional internal administrative procedures were desirable for the reason that in many State agencies there was an absence of procedural guidelines. In order to further cover the administrative law field and in 1970 the Legislature adopted Chapter 101 "Relating to Administrative Procedure." See generally A.R.S. §§ 41–1001 to 41–1013. The provisions of the 1952 act are now placed in the Arizona *Revised Statutes* along with the 1970 act as Chapter 6 of Title 41 entitled "Administrative Procedure."

## THE FACTS

The plaintiff graduated from an accredited dental school in 1970. He passed the theoretical portions of the National Board Examination, passing part 1 with a grade of 83 and passing part 2 with a grade of 84 or an average of 83.5. These are known as standard deviation scores. He was commissioned and served as a dental officer with the United States Army.

In 1972 the plaintiff, for the third time, applied to the Board seeking a license to practice his profession in Arizona. Before taking the examination he signed the following application.

"The Board will accept an applicant's CERTIFICATE of the National Board of Dental Examiners for EXEMPTION from the Written Theory Examination portion of the Arizona State Dental Board Examination. The applicant must also take and pass the Clinical Examination portion of the Arizona State Dental Board Examination with an average of 75% or more in order to be licensed.

"Statement to be signed by applicant if he wishes EXEMPTION from Written Theory of Arizona State Dental Board portion of Examination.

"I hereby apply for exemption from the Written Theory Examination portion of the Arizona State Dental Board Examination.

"I have CERTIFICATE No. 691318 of the National Board of Dental Examiners. (copy attached)

"I will be required to take and pass the Clinical Examination portion of the Arizona State Dental Board Examination with an average of 75% or more in order to be licensed.

/s/ Bert E. Hoffman DDS
Signature of Applicant"

The first paragraph of the foregoing application is a quotation of Board Rule 4. The rule was promulgated with the approval of the office of The Attorney General and the application form was also approved by that office.

The plaintiff took the clinical test on 16 and 17 December 1972. On 7 January 1973 he was officially advised that he had secured a grade of 72 on the clinical examination and that he would not be granted an Arizona license. The plaintiff did not apply to the Board within 15 days, or at all, for a hearing and instead on 9 February 1973 he filed a complaint in the Superior Court against the Board seeking a judgment which would direct that the Board issue him a license to practice dentistry in Arizona. The Superior Court granted the plaintiff his requested relief by summary judgment and this appeal followed.

## THE BOARD'S RULE 4

The plaintiff urges that while the statutes grant to the Board the rule-making power that Rule 4 is contrary to the language of the statute and that it is void. The trial court upheld this contention. The Arizona Supreme Court has held that a board has "no jurisdiction to impose special requirements for applicants by rule or regulation which were not imposed by statute." *Arizona State Board of Funeral Directors and Embalmers v. Perlman*, 108 Ariz. 33, 35, 492 P.2d 694, 696 (1972). The plaintiff relies on A.R.S. § 32–1233 which we quote in part:

"32–1233. Examination

"A. Examinations shall be upon subjects included in the curricula of recog-

nized dental schools and shall be both theoretical and practical. Any board member participating in an examination being given by the board may examine a candidate in any subjects included in the examination. The theoretical examination shall be written in the English language and may be supplemented by an oral examination at the discretion of the board. The practical examination shall consist of laboratory technique and clinical demonstrations. The theoretical and practical examinations shall be graded at fifty per cent each, but the board in its discretion, may allow applicants who have been engaged for more than five years in the practice of dentistry a greater percentage, not over seventy-five, according to the number of years of practice, for the practical examination.

"B. The board may delegate any part of the written theoretical examination to a properly qualified examining body created by the laws of this state, and may require that an applicant shall accompany his application with a certificate showing that he has passed the examination of the examining body in the subject matter assigned to it."

The plaintiff urges that subsection (A) mandates that the theoretical and the clinical portions of the examination must be averaged 50% each and that by so doing he received an average grade of 77.77 which is higher than the passing grade of 75. (Except for the clinical grade and the question of averaging, the record establishes that the plaintiff would have been licensed.)

The Board urges that it is not possible to give 50% weight to the National Board theory test results graded on the standard deviation basis on the one hand and to the Arizona Board clinical test results graded on a raw score basis on the other. The standard deviation score by definition is based on a different mathematical formula from the raw scores. The National Board examination on theory is rated on a standard deviation basis which selects an arbitrary figure as a mean and the applicant's scores are converted into a deviation score either above or below that mean. The raw score method of grading is used in the clinical test as well as in the theory test by the Board in Arizona. The Board's method of grading in Arizona is a raw score, that is, a percentage of correct answers. The Board's contention is supported by the uncontradicted affidavit of Eldon Bills, D. D.S., a member of the Board.

■■ Had the plaintiff taken both the theoretical and the clinical portions of the examination in Arizona, both graded on a raw score basis, the statutory 50% for each would govern. A.R.S. § 32–1233(B) permits but does not mandate that the Board recognize the National Board theory examination. Each Arizona applicant is granted an election by Rule 4 as provided in the above-quoted form. Each applicant can elect to take both phases of the examination here in Arizona or he can elect to request that the Board accept the National Board theory examination on condition that the applicant pass the Arizona clinical examination with a raw score of 75%. We hold that since the election rests with each applicant, the rule is consistent with the statute as it then existed. It is interesting to note that in 1974 there were extensive amendments to the dental code and included therein was a modification of A. R.S. § 32–1233 making it clear that the results of the National Board theory examination need not be averaged with the Arizona clinical examination and that the Board can require a passing grade on the Arizona clinical phase thereof.

## ADMINISTRATIVE PROCEDURES

■ Earlier in this opinion we set forth a brief chronology of the Arizona statutes involved. The definitions contained in A.R.S. § 41–1001, a portion of the Arizona Revised Statutes relating to administrative procedure, are all inclusive and are broad enough to embrace the plaintiff and the Board. The Board urges that the plaintiff did not exhaust his administrative remedies and for that reason

that he has no standing in court. The principle of the necessity of exhausting the administrative remedies before seeking relief in court is well established in Arizona. This is true whether the remedies are set forth in the act creating the agency in question or whether the remedies are guided by the general statutes relating to administrative procedure. See Campbell v. Chatwin, 102 Ariz. 251, 428 P.2d 108 (1967) and Mountain View Pioneer Hospital v. Employment Security Commission, 107 Ariz. 81, 482 P.2d 448 (1971). In our opinion A.R.S. § 41–1013 granted to the plaintiff 15 days after the notice that he had failed the clinical portion of the examination to apply for a hearing before the Board. This he did not do. Our Supreme Court has said "that even where otherwise proper the exhaustion of remedies rule should not be summarily applied where jurisdiction of the agency is being contested, where the agency's expertise is unnecessary or where irreparable harm will be caused to the party by requiring the exhaustion of the administrative remedies." Campbell v. Chatwin, supra, 102 Ariz. at 257, 428 P.2d at 114. These situations are not present in this case.

■ The plaintiff urges that since A.R.S. § 32–1264(D) (Prior to 1974) granted the right to a judicial review of the revocation of a license, the same being a provision similar to § 21 of the Dental Act of 1935, and is silent as to the right of a judicial review in relation to the denial of a license which had been sought by examination, the statutes relating to administrative procedures do not apply. The plaintiff further urges that it was not necessary for him to exhaust his administrative remedies under A.R.S. § 32–1264(D). The statutes relating to dentistry do not expressly grant a judicial review to one failing to pass the examination and yet the plaintiff sought his remedy pursuant to that portion of the statutes relating to the judicial review of administrative decisions. We fail to comprehend why administrative procedures should not apply and why judicial review should apply. We hold that both apply.

■ The record establishes that the plaintiff was not aware of the statutes relating to administrative procedure and that the Board did not inform him of the 15-day requirement. The plaintiff urges that this situation creates a lack of due process. We do not agree. See Campbell, supra, wherein it was pointed out that there was a failure to notify Raible or Gaumer of their right to an administrative hearing, 102 Ariz. at 254, 428 P.2d at 111. Nevertheless, this was not fatal to the necessity to exhaust the administrative remedies. To the same effect see Stautz v. Pence, 21 Ariz.App. 153, 517 P.2d 111 (1973).

The plaintiff urges that it would have been a futile act for him to apply for a hearing before the same Board which did not give him a passing grade on the clinical examination. The trial court upheld this contention in its conclusions of law. We do not find support for this contention nor for this legal conclusion in the record. There was no evidence taken which would indicate the validity of this contention. There is nothing unusual about asking an administrative body or a court to reconsider its initial decision before a person aggrieved by that decision may proceed with his judicial remedies or with further judicial remedies.

### THE RECORD

The Board made a motion to dismiss in the trial court. This was supplemented by discovery proceedings and by Dr. Bills' affidavit. Thus, the Board's motion became a motion for summary judgment. Civil Rule 12(b), 16 A.R.S. The plaintiff likewise made a motion for a summary judgment. The trial court granted the plaintiff's motion and denied the Board's motion. In both of these rulings the trial court was in error.

The Board urges that the plaintiff's motion for summary judgment was not properly granted, urging that at least there were material factual issues which could not be so resolved. In view of our holding

we do not deem it necessary to address ourselves to these contentions.

This cause is reversed with directions to grant the Board's motion to dismiss.

OGG, P. J., and DONOFRIO, J., concur.